1
2
3
4
5
6
7
8                     IN THE UNITED STATES DISTRICT COURT
9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11  ROBERT FRANK PORTUNE,              )      No. C 06-06265 JW (PR)
                                       )
12          Petitioner,                )      ORDER DENYING PETITION FOR
                                       )      A WRIT OF HABEAS CORPUS
13      vs.                            )
                                       )
14                                     )
    SUSAN ORNOSKI, Warden,             )
15                                     )
            Respondent.                )
16                                     )
17  _____

18          Petitioner, a prisoner at San Quentin State Prison, filed this pro se petition for

19  a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Central District of

20  California.  The petition was subsequently transferred to this court.  Petitioner

21  challenges the Board of Prison Terms's ("BPT") finding in 2005 that he was

22  unsuitable for parole.  The Court found that the petition, liberally construed, stated

23  cognizable claims under § 2254, and ordered respondent to show cause why a writ

24  of habeas corpus should not be granted.  Respondent filed an answer, and petitioner

25  filed a traverse.

26                                **BACKGROUND**

27          In 1977, petitioner was convicted by a jury in the Superior Court of the State

28  of California in and for the County of San Bernardino, of first degree murder, first

United States District Court
For the Northern District of California

degree robbery and the use of a firearm.  He was sentenced to an indeterminate life

sentence in state prison.  On September 15, 2005, the BPT found petitioner to be

unsuitable for parole after his thirteenth parole suitability hearing.  Petitioner

challenged the BPT's decision by way of habeas corpus petitions filed in all three

levels of the California courts, which denied the petitions.  Petitioner filed the instant

federal habeas petition on October 4, 2006.

**DISCUSSION**

A.    Standard of review

This Court will entertain a petition for a writ of habeas corpus "in behalf of a

person in custody pursuant to the judgment of a State court only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any

claim adjudicated on the merits in state court unless the state court's adjudication of

the claim: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if

the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the]

Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor,

529 U.S. 362, 412-413 (2000).  "Under the 'reasonable application clause,' a federal

habeas court may grant the writ if the state court identifies the correct governing

legal principle from [the] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that

United States District Court

For the Northern District of California

1   the relevant state-court decision applied clearly established federal law erroneously

2   or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

3        "[A] federal habeas court making the 'unreasonable application' inquiry

4   should ask whether the state court's application of clearly established federal law

5   was 'objectively unreasonable.'"  Id. at 409.  In examining whether the state court

6   decision was objectively unreasonable, the inquiry may require analysis of the state

7   court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir.

8   2003).  The standard for "objectively unreasonable" is not "clear error" because

9   "[t]hese two standards . . . are not the same.  The gloss of error fails to give proper

10   deference to state courts by conflating error (even clear error) with

11   unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

12        A federal habeas court may grant the writ if it concludes that the state court's

13   adjudication of the claim "results in a decision that was based on an unreasonable

14   determination of the facts in light of the evidence presented in the State court

15   proceeding."  28. U.S.C. § 2254(d)(2).  The court must presume correct any

16   determination of a factual issue made by a state court unless the petitioner rebuts the

17   presumption of correctness by clear and convincing evidence.  28. U.S.C. §

18   2254(e)(1).

19        Where, as here, the highest state court to consider the petitioner's claims

20   issued a summary opinion which does not explain the rationale of its decision,

21   federal review under § 2254(d) is of the last state court opinion to reach the merits.

22   See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d

23   964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to

24   address the merits of petitioner's claims is the opinion of the San Bernardino County

25   Superior Court.  (Resp. Ex. 5 (In Re Robert Frank Portune, No. SWHSS-8612, May

26   8, 2006).)

27   B.    Claims and Analysis

28        Petitioner seeks federal habeas corpus relief from the BPT's September 15,

United States District Court

For the Northern District of California

1   2005 decision finding him not suitable for parole.  Petitioner has appeared before the

2   BPT thirteen times, including the September 2005 hearing, without being granted

3   parole.  Petitioner claims the following as grounds for habeas relief: (1) the BPT's

4   denial of parole violated his Fourteenth Amendment right to due process because the

5   decision was not supported by any evidence having indicia of reliability; (2) the BPT

6   violated his First Amendment right to the free exercise of religion because the denial

7   of parole was based on his failure to attend Narcotics Anonymous, a program that

8   violates his religious beliefs; (3) the BPT's practice of denying parole in nearly

9   every case violates his right to due process; and (4) petitioner was convicted of a

10  crime without due process.

11          1.      Due Process

12          California's parole scheme provides that the BPT "shall set a release date

13  unless it determines that the gravity of the current convicted offense or offenses, or

14  the timing and gravity of current or past convicted offense or offenses, is such that

15  consideration of the public safety requires a more lengthy period of incarceration for

16  this individual, and that a parole date, therefore, cannot be fixed at this meeting."

17  Cal. Penal Code § 3041(b).  This parole scheme "gives rise to a cognizable liberty

18  interest in release on parole."  See McQuillion v. Duncan, 306 F.3d 895, 902 (9th

19  Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v.

20  Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)).  See also Irons v.

21  Carey, 505 F.3d 846, 851 (9th Cir.), reh'g and reh'g en banc denied, 506 F.3d 951

22  (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28

23  (9th Cir. 2006), reh'g and reh'g en banc denied, No. 05-16455 (9th Cir. Feb. 13,

24  2007); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003).  It matters not that,

25  as is the case here, a parole release date has never been set for the inmate because

26  "[t]he liberty interest is created, not upon the grant of a parole date, but upon the

27  incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-16 (9th Cir.

28  2003) (finding initial refusal to set parole date for prisoner with 15- to- life sentence

United States District Court
For the Northern District of California

1    implicated prisoner's liberty interest).[1]

2          A parole board's decision must be supported by "some evidence" to satisfy

3    the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some

4    evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472

5    U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was

6    some evidence from which the conclusion of the administrative tribunal could be

7    deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not

8    required, nor is an independent assessment of the credibility of witnesses nor

9    weighing of the evidence. Id. The relevant question is whether there is any

10   evidence in the record that could support the conclusion reached by the Board. See

11   id. The court "cannot reweigh the evidence;" it only looks "to see if 'some

12   evidence' supports the BPT's decision." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir.

13   1994).

14         Due process also requires that the evidence underlying the parole board's

15   decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306

16   F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).

17   Relevant in this inquiry is whether the prisoner was afforded an opportunity to

18   appear before, and present evidence to, the board. See Pedro v. Oregon Parole Bd.,

19   825 F.2d 1396, 1399 (9th Cir. 1987). In sum, "if the Board's determination of

20   parole suitability is to satisfy due process there must be some evidence, with some

21   indicia of reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229,

22   1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

23         California Code of Regulations, title 15, section 2402(a) states that "[t]he

24   panel shall first determine whether the life prisoner is suitable for release on parole.

25   _____

26         [1] The Supreme Court of California's opinion in In re Dannenberg, 34 Cal. 4th
     1061 (2005), does not compel a different conclusion. Dannenberg supports, rather
27   than rejects, the existence of a constitutional liberty interest in parole in California.
     Accord Machado v. Kane, No. C 05-1632 WHA (PR), 2006 WL 449146, at **2-4
28   (N.D. Cal. Feb. 22, 2006) (rejecting argument that Dannenberg construed section
     3041 as no longer creating an expectancy of release).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Regardless of the length of time served, a life prisoner shall be found unsuitable for

2  and denied parole if in the judgment of the panel the prisoner will pose an

3  unreasonable risk of danger to society if released from prison."  Cal. Code of Regs.,

4  tit. 15, § 2402(a).  The regulations direct the panel to consider "all relevant, reliable

5  information available."  Cal. Code of Regs., tit. 15, § 2402(b).  Further, the

6  regulations enumerate various circumstances tending to indicate whether or not an

7  inmate is suitable for parole, *e.g.*, the prisoner's social history, past criminal history,

8  and base and other commitment offenses, including behavior before, during and

9  after the crime.  See Cal. Code of Regs., tit. 15, § 2402(c)-(d).[2]

10      The record shows that on September 15, 2005, petitioner appeared with

11  counsel before a BPT hearing panel for his thirteenth parole consideration hearing.

12  The panel began with a discussion of petitioner's social and criminal history.  See

13  Hr'g Tr. at 4-8 (Resp't Ex. 2).  The panel then reviewed the facts of the crime, how

14  the incident unfolded, petitioner's thoughts during the commission of the crime, and

15  his remorse.  Id. at 8-13.  The panel also discussed reports of prison disciplinary

16  actions against petitioner, including three serious rule violations reports.  Id. at 20-

17  23.  The discussion then turned to petitioner's behavior while incarcerated, including

18  his programming and 2003 psychological evaluation.  Id. at 25-28, 30-32.

19  Petitioner's parole plans if released were also discussed.  Id. 35-46.  The hearing

20  closed with final statements from the deputy district attorney, petitioner's attorney,

21  and petitioner.  Id. at 51-62.

22  _____

23      [2] The circumstances tending to show an inmate's unsuitability are: (1) the
   commitment offense was committed in an "especially heinous, atrocious or cruel
24  manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic
   sexual offenses; (5) psychological factors such as a "lengthy history of severe mental
25  problems related to the offense;" and (6) prison misconduct.  Cal. Code of Regs., tit.
   15, § 2402(c).  The circumstances tending to show suitability are: (1) no juvenile
26  record; (2) stable social history; (3) signs of remorse; (4) commitment offense was
   committed as a result of stress which built up over time; (5) Battered Woman
27  Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility
   of recidivism; (8) plans for future including development of marketable skills; and
28  (9) institutional activities that indicate ability to function within the law.  Cal. Code
   of Regs., tit. 15, § 2402(d).

After recessing to deliberate, the BPT concluded that petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Id. at 63. The panel noted that "the offense was carried out in a cruel and callous manner" and "in a dispassionate and calculated manner" based on undisputed facts that multiple victims were involved with one murder victim being shot four times – three times in the back and a fourth time in the head while the victim was already down. Id. at 63-64. The panel also found that the motive for the crime was "inexplicable or very trivial in relationship to the offense." Id. at 63. Petitioner admitted that he was an heroin addict at the time and was robbing the murder victim's store to get money to buy drugs. Id. at 10-11.[3]

In addition, the BPT found that petitioner had an escalating pattern of criminal conduct leading up to the commitment offense. The panel found petitioner's institutional behavior was "atrocious" due to three serious disciplinary actions for conspiracy to introduce illegal contraband (narcotics/drugs) in the institution, possession of marijuana, and tampering with a urine sample. Id. at 65. The panel stated that petitioner needed "further therapy programming and self-help in order to face, discuss, understand and cope with stress in a non-destructive manner as well as to get further insight into his crime." Id. The panel found that petitioner had not sufficiently participated in self-help programs such as Narcotics Anonymous ("NA") or the equivalent. Id. at 70. Petitioner refused to participate in NA because he did not relate to the members in the group and did not like the facilitator. Id. at 16. However, the panel found these reasons insufficient and "illogical." Id. at 65. Although petitioner was participating in Vietnam Veterans Group ("VVG"), the panel was not convinced that VVG provided drug rehabilitation

---

[3] The second victim discovered the murder victim while petitioner was still robbing the store. Petitioner threatened the second victim at gunpoint to get into a storage room from which the victim later escaped after petitioner had left the premises. Id. at 9.

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Portune06265_denyHC-parole.wpd      7

United States District Court

For the Northern District of California

1    support which petitioner needed as a former drug addict.  Id. at 70.  The panel also

2    referred to the most recent psychiatric evaluation which indicated that petitioner was

3    a "moderate risk to re-offense."  Id.  Earlier during the hearing, the panel read the

4    conclusion of the 2003 evaluation which stated as follows:

> The most important factor to [petitioner's] maintaining his
> rehabilitation is abstinence from drugs.  He states that he will
> become involved in Narcotics Anonymous upon release. [Petitioner]
> would demonstrate his sincerity in this regard by participating in
> Narcotics Anonymous and Alternatives to Violence while in prison.
> And in addition he needs to remain disciplinary-free.

Id. at 32.  Although the panel commended petitioner for making recent gains, e.g.,

positive participation in VVG among other activities, which showed an effort to

reach out and to place himself "on the positive side of behavior that is expected of a

rehabilitated person," id. at 68, the BPT nonetheless found that petitioner must

"demonstrate an ability to maintain the gain over an extended period of time," id. at

67.  The BPT concluded that a period of observation or evaluation was required

before the panel should find petitioner suitable for parole.  Id. at 71-72.

 In its order denying habeas relief, the superior court determined that the

record contained some evidence to support the Board's finding that Petitioner was

unsuitable for parole.  The court made the following observations:

> A review of the proceedings on [September] 15, 2005 before the
> Board indicates that the Petitioner on August 9, 1976 robbed a gas
> station at Holleran Summit off Interstate Highway 15, East of Baker,
> California.  The facts of the crime indicate that the employee or
> owner of the gas station, a Harold Mansfield[,] was found in the
> station area dying from a gunshot wound.  As the witness, who found
> the victim[,]  went to the office area of the station to call for help[,]
> the Petitioner stepped out and placed the witness, a Mr. Allbreton[,]
> in a locked storage area and ordered him to be quiet.  After about
> five minutes, the Petitioner departed the station taking the money
> from the cash register with him.
>
> The victim was killed with four gunshot wounds to his back and
> head.  The Petitioner was identified by the police through his use of a
> stolen credit card.  The Petitioner was arrested in Las Vegas two
> days later.
> ...
>
> The hearing before the Board on September 15, 2005 revealed that

**United States District Court**
For the Northern District of California

1

the Board considered all of the required factors as set forth in California Code of Regulations, Title 15, Section 2402(a)-(d) and as specified by the California Supreme Court in In re Rosenkrantz 29 Cal. 4th 616; and, In re Dannenberg 34 Cal. 4th 1061.

...

2

3

4

The review of the record supports a finding that there was "some evidence" which led the Board to its finding of unsuitability of the Petitioner for parole, for, as the High Court described such evidence, it need be only a "modicum" of evidence.

5

6

7

The Board did consider the positive factors which favored parole and made its findings that these did not outweigh the factors surrounding the circumstances of the crime. While the decision did not reflect the weighing process of the Board, the Rosen[k]rantz Court, at page 677, clearly states that the Board need not explain its decision or the precise manner in which the specific facts were relevant to parole suitability. This consideration and balancing lie solely within the discretion of the Board.

8

9

10

11

The decision of the Board at the conclusion of the hearing specified that the Board found that the offense was carried out in a cruel and callous manner that demonstrated and [sic] exceptionally callous disregard for human suffering. The Board further found that the Petitioner had an escalating pattern of criminal conduct and had failed at previous grants of probation and periods of time in the county jail. The Board stated that the Petitioner's institutional behavior is "atrocious." The Board further found that the Petitioner has not participated sufficiently in self-help programs. The Board held that the Petitioner had failed to demonstrate evidence of positive change in his conduct while incarcerated which included a 128 in 2001 for smoking and another addictive problem. He also had received three serious 115 Disciplinary reports. The Board found that the Petitioner was taking drugs and came to the conclusion that he was also selling and bringing drugs in to the prison.

12

13

14

15

16

17

18

19

The Board found that the Petitioner needed further therapy programming and self-help in order to face, discuss, understand and cope with stress in a non-destructive manner as well as to get further insight into his crime. The Board found that the Prisoner's gains were recent and that he must demonstrate an ability to maintain these gains over an extended period of time.

20

21

22

The Board found that the factors of unsuitability outweigh the factors of the positive aspects. Further, the Board found that a period of evaluation of the Petitioner was required before the Board should find the Petitioner suitable for parole.

23

24

25

Under the rules of Judicial Review as now have been clearly established by the California Supreme Court, there is "some evidence" to support the Board's finding of unsuitability and it does appear from the record that the Board gave clear consideration if the specific required factors as they applied to the Petitioner.

26

27

28

In Re Robert Frank Portune, No. SWHSS-8612, slip op. 1-3 (May 8, 2006) (Resp't

United States District Court

For the Northern District of California

Ex. 5).  The state courts' rejection of petitioner's claim was not contrary to, or an unreasonable application of, the <u>Hill</u> standard, or based on an unreasonable determination of the facts.  <u>See</u> 28 U.S.C. § 2254(d).  The BPT's September 15, 2005 decision to deny petitioner parole is supported by some evidence in the record bearing some indicia of reliability that petitioner's substance abuse problem and lack of involvement in relevant self-help programs presented a risk that he would return to drugs which would make him a danger to society.  <u>See, e.g.</u>, <u>Rosas</u>, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); <u>Biggs</u>, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); <u>Morales</u>, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).  The inquiry under <u>Hill</u> is simply "whether there is <u>any</u> evidence in the record that could support the conclusion reached by the [BPT]." <u>Hill</u>, 474 U.S. at 455-56 (emphasis added).  There is - the facts surrounding the crime reasonably suggested that it was carried out in a dispassionate manner; the motive for the crime was inexplicable; and petitioner had disciplinary actions in prison relating to his substance abuse; and petitioner had not sufficiently participated in self-help programs as a former drug addict.  <u>Cf.</u> Cal. Code Regs. tit 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability).  It is not up to this Court to "reweigh the evidence." <u>Powell</u>, 33 F.3d at 42 (9th Cir. 1994).

The Court is satisfied that the BPT gave petitioner individualized consideration and that there is "some evidence" in the record to support the Board's decision to deny petitioner parole at the September 15, 2005 hearing.  Accordingly, petitioner's due process claim is DENIED.

2.     <u>First Amendment</u>

Petitioner's second claim is that the BPT violated his First Amendment right to the free exercise of religion because the denial of parole was based on his failure

United States District Court

For the Northern District of California

1    to attend NA, a program which petitioner claims violates his religious beliefs.  This

2    claim is without merit.  As discussed above, the panel's finding that petitioner had

3    not sufficiently participated  in self-help programs was one of several reasons for its

4    decision to deny parole.  See supra at pp. 7-8.  The panel had reason to be concerned

5    that petitioner, whose heroin addiction lead to him committing first degree murder,

6    participate sufficiently in self-help programs relevant to his drug abuse problem.  In

7    fact, the panel considered petitioner's participation in VVG but concluded it was an

8    insufficient alternative because there was nothing to show that VVG provided drug

9    rehabilitation support.  The BPT's conclusion was not that petitioner had failed to

10   specifically participate in NA but that he failed to participate in at least an

11   "equivalent" drug rehabilitation program.  Hr'g Tr. at 70.  Accordingly, this claim is

12   DENIED as without merit.

13          3.      Anti-Parole Policy

14          Petitioner's third claim is that the BPT has a practice of denying parole in

15   nearly every case which violates his right to due process.  In other words, petitioner

16   alleges that the BPT denies parole as a matter of policy without giving individual

17   consideration.  Promulgation of an anti-parole or no-parole policy is violative of an

18   inmate's due process rights.  See In re Rosenkrantz, 29 Cal 4th 616, 683 (2002) ("It

19   is well established that a policy of rejecting parole solely on the basis of the type of

20   offense, without individualized treatment and due consideration, deprives an inmate

21   of due process of law.").  However, petitioner has not met his burden of

22   demonstrating that an anti-parole or no-parole policy exists and that such policy was

23   applied in his individual parole denial.  See James v. Borg, 24 F.3d 20, 26 (9th Cir.

24   1994) ("Conclusory allegations which are not supported by a statement of specific

25   facts do not warrant habeas relief"); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.

26   1995) (denying petitioner's Brady claim argued in a single page without reference to

27   the record or any document).  Furthermore, even if petitioner were to provide

28   evidence sufficient to prove an anti-parole or no parole policy, he would not be

eligible for habeas relief because he was not subject to such a policy here.  Petitioner received individualized treatment, and the BPT's decision to deny petitioner parole was supported by some evidence with an indicia of reliability which is all that is required to satisfy due process.  See Rosas v. Nielsen, 428 F.3d at 1232.  Accordingly, this claim is DENIED as without merit.

### 4.    Convicted of Crime without Due Process

Petitioner's last claim is that the BPT found petitioner guilty of a crime, *i.e.*, that he brought and trafficked drugs in prison, without due process.  (Pet. 6b.)  Even assuming that the BPT wrongly concluded that petitioner was guilty of such a crime, the BPT's decision to deny parole was based on "some evidence" with an "indicia of reliability," including the cruel and callous manner in which the commitment offense was carried out and petitioner's failure to participate in self-help programs to address his drug abuse problem.  See Rosas v. Nielsen, 428 F.3d at 1232.  Accordingly, this claim is DENIED as meritless.

In conclusion, the state courts' rejection of petitioner's challenge to the BPT's September 15, 2005 decision was neither contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief.

**CONCLUSION**

For the foregoing reasons, the petition for a wit of habeas corpus is DENIED.

DATED: _____March 2, 2009_____          _____

JAMES WARE
United States District Judge

United States District Court
For the Northern District of California

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

ROBERT FRANK PORTUNE,

              Petitioner,

  v.

SUSAN ORNOSKI, Warden,

              Respondent.

_____/

Case Number: CV06-06265 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____3/13/2009_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert Frank Portune B81309
San Quentin State Prison
San Quentin, Ca 94974

Dated: _____3/13/2009_____

                        Richard W. Wieking, Clerk
/s/  By: Elizabeth Garcia, Deputy Clerk